**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**GERALD L.,**

                    **Plaintiff,**

**v.**                                                          **1:18-CV-00555 (NAM)**

**COMMISSIONER OF SOCIAL SECURITY,**

                    **Defendant.**

_____

**Appearances:**

Stephen J. Mastaitis
Buckley, Mendleson Law Firm
29 Wards Lane
Albany, New York 12204
_Counsel for Plaintiff_

Graham Morrison
Social Security Administration
Office of Regional General Counsel - Region II
26 Federal Plaza - Room 3904
New York, New York 10278
_Counsel for Defendant_

**Hon. Norman A. Mordue, Senior United States District Court Judge**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

        Plaintiff Gerald L. filed this action under 42 U.S.C. § 405(g), challenging the denial of

his application for Disability Insurance Benefits ("DIB") under the Social Security Act ("the

Act").  (Dkt. No. 1).  The parties' briefs are presently before the Court.  (Dkt. Nos. 9, 12).

After carefully reviewing the administrative record, (Dkt. No. 8), and considering the parties'

arguments, the Court reverses the Commissioner's determination, and remands for further proceedings consistent with this opinion.

## II.    BACKGROUND

### A.  Procedural History

Plaintiff applied for disability benefits in January 2017, alleging that he had been disabled since October 8, 2010.  (R. 125–28).  Plaintiff alleged that his disability was caused by herniated discs in his back and spine, deteriorating discs in his back, extreme back and neck pain, bone loss in his spine, joint pain, arthritis, depression, and stage IV tonsillar cancer remission.  (R. 145).  The Social Security Administration ("SSA") denied Plaintiff's application on April 6, 2017.  (*See* R. 83–87).  Plaintiff appealed that determination and requested a hearing before an Administrative Law Judge ("ALJ").  (*See* R. 89).  The hearing was held on May 10, 2017 before ALJ Dale Black-Pennington.  (R. 31–65).  Plaintiff was not represented by counsel at the hearing.  (*Id*.).  On September 13, 2017, the ALJ issued a decision finding that Plaintiff was not disabled under the Act.  (R. 17–27).  Plaintiff commenced this action on May 9, 2018.  (Dkt. No. 1).

### B.  Plaintiff's Background and Testimony

Plaintiff was born in 1965.  (R. 67).  He received his GED in 2010 while he was incarcerated.  (R. 146, 283).  Plaintiff worked as a laborer/furniture mover for various moving companies from 1984 to 2010.  (R. 146).  At times, Plaintiff also worked as an asbestos remover from 2001 to 2010.  (*Id*.).  Plaintiff testified that he stopped working because of his medical conditions.  (R. 145).  He has not worked since October 8, 2010.  (*Id.*).

At the hearing, Plaintiff stated that his physical conditions cause weakness in his legs and aching pain in his back.  (R. 47).  Plaintiff stated that his back and hips get stiff when he

sits, stands, or lays down too long. (*Id*.). He testified that his pain interferes with his sleep and limits him to four hours of sleep each night. (R. 47, 53). Plaintiff wears a back brace and treats his pain with ibuprofen. (R. 47–48). Plaintiff stated that he cannot walk far, can only stand for about a half an hour, and can bend, stoop, and squat with some difficulty. (R. 50–51). Plaintiff testified that he can regularly lift between ten and twenty pounds. (R. 51). As to his mental health, Plaintiff testified that he has anxiety, gets nervous around people, and sees a therapist for counseling. (R. 50).

Plaintiff lives with his girlfriend. (R. 42). Plaintiff stated he spends his days taking the dog out, watching television, listening to the radio, working on puzzles, walking to the mailbox, and napping. (R. 170, 285). Plaintiff reported that he can prepare simple meals, and perform light house work. (R. 172). With regard to personal care, Plaintiff reported that he is able to dress, bathe, and groom himself. (R. 284). Plaintiff reported showering several times a week, but noted that his conditions affect his ability to wash his feet and legs. (R. 53, 171). Plaintiff also reported having difficulty putting socks and shoes on because it requires him to bend too far. (R. 194). Plaintiff does not have a driver's license. (R. 43, 173).

### C. Medical Evidence of Disability

Plaintiff's disability claim stems from conditions including herniated discs in his back and spine, deteriorating discs in his back, extreme back and neck pain, bone loss in his spine, joint pain, arthritis, depression and anxiety, and stage IV tonsillar cancer remission. (R. 145). Plaintiff claims that he has struggled with these conditions since 2010 and has received treatment from a number of medical providers.

### 1. Albany Medical Center, Otolaryngology

Plaintiff was seen by Dr. Lisa Galati for tonsillar cancer treatment from 2011 to 2013. (R. 216–37, 267–81). On May 2, 2014, Dr. Galati completed a medical assessment regarding Plaintiff's condition following his cancer treatment. (R. 229–34). Dr. Galati's assessment notes that Plaintiff had surgery on his neck in January 2012, and later received chemotherapy and radiation. (R. 232). Dr. Galati noted that, as of August 2013, there was no recurrence or evidence of the disease. (R. 231–32). She also noted that she could not "provide a medical opinion regarding [Plaintiff's] ability to do work-related activities." (R. 234). Dr. Galati completed another evaluation in March 2017 with similar findings. (R. 267–68).

### 2. Dr. Louis A. Noce, Neurosurgeon

In October 2016, Plaintiff presented to Dr. Noce and PA Sherry Alexander for a neurosurgical consultation regarding his continuing back pain symptoms. (R. 238–40). Plaintiff reported that he first developed pain in his lower back in 2014. (R. 238). He noted that the pain radiates down his right leg and causes numbness, tingling, and weakness. (*Id.*). Plaintiff stated that he had been treating his symptoms with Tylenol, Advil, physical therapy, and pain injections. (*Id.*). He rated his pain level as a ten out of ten on the pain scale. (*Id.*). PA Alexander assessed that Plaintiff had "no tenderness to palpation over the lumbar or spinal muscles," and demonstrated a "negative straight leg raise bilaterally." (R. 239). She noted that Plaintiff was able to "toe-heel walk and tandem walk within normal limits." (*Id.*). Plaintiff's "[m]otor strength in the upper and lower extremities [was] 5/5 and symmetric." (*Id.*). An X-ray "show[ed] stable alignment with endplate changes at L4-5 and L5-S1." (*Id.*). Based on the X-ray, Plaintiff was found to have "mild degenerative disc disease" at L4-5. (R. 243). PA Alexander determined that Plaintiff had "lumbar spondylosis" and recommended

that Plaintiff "undergo a formalized course of physical therapy." (R. 239). She determined that Plaintiff would "need an MRI of the lumbar spine with and without contrast to be evaluated for disc herniation and/or nerve root impingement." (*Id*.).

Plaintiff returned in January 2017 for a follow-up assessment, and PA Alexander noted that Plaintiff "walks with a steady gait and posture," and that his "motor strength in the lower extremities is 5/5 and symmetric." (R. 241–42). Again, Plaintiff's straight leg raise test was negative bilaterally. (*Id*.). The MRI results showed "[m]ultilevel disc degeneration, desiccation with facet arthropathy attributing to central and foraminal stenosis L3-S1, most pronounced [at] L4-5." (*Id*.). PA Alexander again recommended physical therapy and pain management injections to address Plaintiff's pain symptoms. (*Id*.).

### 3. Wilton Medical Arts, Saratoga Hospital

Records from Saratoga Hospital show that Plaintiff was treated by various physicians for tonsillar cancer from 2010 to 2013. (R. 251–66). In February 2017, radiation oncologist Dr. Lance Hellman completed an assessment of Plaintiff's condition following treatment. (R. 251–53). Dr. Hellman noted that Plaintiff underwent surgery and then received chemotherapy and radiation. (R. 252). As of Plaintiff's last examination in August 2016, there was "no evidence of the disease." (*Id*.). Dr. Hellman assessed that Plaintiff's cancer diagnosis and treatment resulted in no physical limitations. (*Id*.). He opined that Plaintiff's ability to lift, carry, push, and pull would be "limited" due to the recommendation that Plaintiff "not strain his neck." (R. 252–53). Dr. Hellman assessed that Plaintiff had no limitations to sitting, and could "stand and/or walk" for "up to [two] hours per day." (*Id*.).

### 4. Dr. Brett Hartman, Consultative Examiner

In March 2017, Plaintiff presented to Dr. Brett Hartman for a consultative psychiatric evaluation. (R. 282–86). Plaintiff reported to Dr. Hartman that his back condition caused him "difficulty falling asleep most nights and [that] he awakens about four times per night." (R. 282). Plaintiff reported having "depressive symptoms including 'bad thoughts' and isolation." (R. 283). He recalled experiencing sadness, crying spells, low energy, feelings of guilt, hopelessness, and loss of interest. (*Id.*). Plaintiff stated that "he has never been suicidal or homicidal." (*Id.*). Dr. Hartman noted that Plaintiff "was a cooperative, pleasant, yet anxious individual." (*Id.*). Dr. Hartman found that Plaintiff's attention and concentration "appeared to be mildly impaired," and that his "intellectual functioning appeared to be in the low average to borderline range with a borderline general fund of information." (R. 284). Plaintiff was "able to understand and remember or apply simple directions," and had "mild difficulty using reason and judgment to make work-related decisions." (R. 285).

Dr. Hartman's Medical Source Statement found that:

> [Plaintiff] is able to understand, remember or apply simple directions. He has a fair ability to maintain an ordinary routine. He has a fair ability to maintain personal hygiene and awareness of normal hazards. He has mild difficulty using reason and judgment to make work-related decisions. He has mild difficulty sustaining concentration and performing a task at a consistent pace. He has mild to moderate difficulty regulating his emotions. He has moderate difficulty interacting adequately with others. He has moderate difficulty understanding, remembering, and applying complex directions.

(R. 285). Dr. Hartman noted that Plaintiff's conditions were "consistent with learning deficits and mild psychiatric problems." (*Id.*). He concluded that Plaintiff's prognosis was "[f]air to guarded given the combination of his symptoms," and recommended that Plaintiff "take part in individual counseling to help deal better with [his] current circumstances." (*Id.*).

6

### 5. Dr. Joseph Prezio, Consultative Examiner

Plaintiff underwent a consultative physical examination with Dr. Joseph Prezio in March 2017. (R. 288–92). Dr. Prezio noted that Plaintiff's gait and stance were normal, he walked without an assistive device, and he did not appear to be in acute distress. (R. 289). Plaintiff needed no help changing for the exam, getting on and off the exam table, or raising from the chair. (*Id.*). Plaintiff's straight leg raise test was negative bilaterally. (R. 290). Plaintiff had full range of motion of his hips, knees, and ankles bilaterally. (*Id.*). Dr. Prezio noted that Plaintiff had "no sensory deficit," and "strength 5/5 in the upper and lower extremities." (*Id.*). Dr. Prezio diagnosed Plaintiff with "low back pain," "right knee pain," and "post cancer of the tonsils with residual neck findings from the previous surgery of a deforming nature only." (R. 291). Dr. Prezio's Medical Source Statement concluded that:

> [Plaintiff] has mild to moderate limitations with respect to engaging in any prolonged standing, walking, squatting, kneeling, bending, or doing any heavy lifting as a result of the findings noted in the lumbar region.

(*Id.*). Dr. Prezio assessed that Plaintiff's prognosis was stable. (*Id.*).

### D. ALJ's Decision Denying Benefits

On September 13, 2017, ALJ Black-Pennington issued a decision denying Plaintiff's application for disability benefits. (R. 17–27). At step one of the five-step sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 8, 2010. (R. 19).

At step two, the ALJ determined that, under 20 C.F.R. § 404.1520(c), Plaintiff had three "severe" impairments: "history of left tonsillar cancer status post resection, lumbar disc disease status post surgery, and adjustment disorder with depressed mood and social anxiety disorder." (*Id.*). Specifically, the ALJ noted that Plaintiff underwent a biopsy of a neck mass in October

2010 and a neck resection in January 2012. (*Id.*). Plaintiff's physicians assessed that his prognosis was good following chemotherapy and radiation. (R. 20). The ALJ also reviewed the medical evidence regarding Plaintiff's back pain and mental health. (*Id.*).

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526) (the "Listings"). (R. 20). The ALJ noted that there was no evidence of metastasis or recurrence of Plaintiff's cancer, and that Plaintiff "was able to ambulate effectively" and "exhibited no evidence of motor, sensory or reflex deficits . . . ." (*Id.*). The ALJ also found that Plaintiff had mild to moderate mental limitations. (*Id.*).

At step four, the ALJ determined that Plaintiff:

> [H]as the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b), except that the claimant should avoid rapid neck movements; requires the ability to change positions for comfort; can stand and walk for 30 minute intervals; can occasionally squat, stoop, crouch, kneel and crawl; can perform simple, routine tasks; can follow simple instructions and directions; can have occasional contact with co-workers and the general public; can learn new tasks with occasional supervision; and can manage changes to the workplace environment.

(R. 22).[1] The ALJ stated that the assessment "is supported by clinical findings, diagnostic findings, and the reports of treating and examining sources." (R. 25). The ALJ considered Plaintiff's testimony that "his back and hips become stiff when sitting for extended periods of time," that "[h]e is unable to walk very far," and that "[s]ome days he has difficulty standing

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. *See* 20 C.F.R. § 404.1567(b).

upright." (R. 23–24). The ALJ referenced Plaintiff's testimony that "he can lift ten to [twenty] pounds," and that he "showers several times per week and is able to make simple meals." (R. 24). The ALJ noted that Plaintiff "does laundry twice a week," and "dusts furniture, washes dishes and performs light housekeeping chores." (*Id*.).

The ALJ gave "some probative value" to consultative examiner Dr. Prezio's opinion that Plaintiff's "ability to engage in prolonged periods of standing and walking [was] mildly to moderately limited as [was] the claimant's ability to squat kneel, bend and engage in heavy lifting." (R. 25). The ALJ found this was consistent with Plaintiff's testimony that "he [was] able to stand for one half hour to one hour at a time before sitting." (*Id*.).

The ALJ found that some of Plaintiff's treating oncologist Dr. Hellman's findings were of "significant probative value." (*Id*.). Specifically, the ALJ considered Dr. Hellman's opinion that Plaintiff had "an unlimited ability to sit, but can only stand and walk for up to two hours per day." (R. 24). The ALJ found "that limitations affecting the claimant's ability to stand and walk do not appear to be supported by the record," because "claimant experienced no radicular symptoms affecting either the upper or lower extremities," and "retains 5/5 strength throughout and had no evidence of neurological deficit." (R. 25).

The ALJ gave consultative psychiatric examiner Dr. Hartman's opinions "considerable probative value." (*Id*.). The ALJ noted that Dr. Hartman "concluded that [Plaintiff] ha[d] an unlimited ability to understand and execute simple tasks and a fair ability to follow routine and be cognizant of hazards." (*Id*.). The ALJ further pointed to Dr. Hartman's assessment that "[Plaintiff's] ability to make work-related decisions, concentrate, and maintain a consistent pace is mildly limited." (*Id*.). The ALJ found that Dr. Hartman's "conclusions are largely consistent with [Plaintiff's] statements regarding his ability to interact with others." (*Id*.).

9

The ALJ gave "limited probative value" to Dr. Dambrocia, a consultative medical consultant who "did not personally examine[] the claimant," but found that Plaintiff "ha[d] a moderately limited ability to understand and remember detailed instructions, complete a normal workday or work week without interruptions from psychologically based symptoms, interact appropriately with the general public and use public transportation." (*Id.*).

Finally, at step five, the ALJ found that Plaintiff "is unable to perform his past relevant work." (*Id.*). The ALJ noted that Plaintiff's past work as an asbestos remover and furniture mover were "occupations [that] required [Plaintiff] to engage in heavy to very heavy levels of physical exertion, which exceed his [RFC]." (*Id.*). Nonetheless, the ALJ determined that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.*). Specifically, the ALJ cites testimony from the vocational expert that Plaintiff would be able to work as a "folder," "assembler," or a "small products assembler." (R. 26, 61–62). Therefore, the ALJ determined that Plaintiff was not disabled because he was capable of successful adjustment to other work that exists in significant numbers in the national economy. (R. 27).

## III. DISCUSSION

### A. Disability Standard

To be considered disabled, a claimant must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the claimant's impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

in any other kind of substantial gainful work which exists in the national economy . . . ." 42

U.S.C. § 1382c(a)(3)(B).

The SSA uses a five-step sequential process to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [*per se*] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Selian v. Astrue*, 708 F.3d 409, 417–18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697

F.3d145, 151 (2d Cir. 2012)); *see also* 20 C.F.R. § 404.1520. The Regulations define residual

functional capacity ("RFC") as "the most [a claimant] can still do despite [their] limitations."

20 C.F.R. § 404.1545. In assessing the RFC of a claimant with multiple impairments, the SSA

considers all "medically determinable impairments," including impairments that are not severe.

*Id*. § 404.1545(a)(2). The claimant bears the burden of establishing disability at the first four

steps; the Commissioner bears the burden at the last. *Selian*, 708 F.3d at 418.

**B. Standard of Review**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court

does not determine *de novo* whether Plaintiff is disabled. Rather, the Court must review the

administrative record to determine whether "there is substantial evidence, considering the

record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

When evaluating the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)). The Court may set aside the final decision of the Commissioner only if it is not supported by substantial evidence or if it is based upon a legal error. 42 U.S.C. § 405(g); *Selian*, 708 F.3d at 417; *Talavera*, 697 F.3d at 151. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447–48 (2d Cir. 2012) (quoting *Moran*, 569 F.3d at 112). The substantial evidence standard is "very deferential," and the Court may only reject the facts found by the ALJ "if a reasonable factfinder would *have to conclude otherwise*." *Id*. at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). Consequently, "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quoting *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)).

### C. Analysis

In challenging the Commissioner's denial decision, Plaintiff contends that the ALJ erred in three ways: (1) improperly weighing the medical evidence; (2) failing to properly credit Plaintiff's testimony and the opinions of his treating sources; and (3) failing to fully develop the record. (Dkt. No. 9, pp. 5–13). The Court will address each argument in turn.

### 1. Evaluation of the Medical Evidence

Plaintiff argues that the ALJ's finding that Plaintiff "can perform a full range of light work is not supported by substantial evidence," pointing to the more restrictive opinions of his treating providers Drs. Hellman and Noce that he "suffers from post-surgical cervical and lumbar degenerative disease affecting range of motion of his neck and use of his upper extremities for pushing/pulling and lifting/carrying." (Dkt. No. 9, p. 13). In response, the Commissioner argues that "the ALJ properly sorted through the medical opinions and reached an RFC determination that best reflected the medical evidence of record." (Dkt. No. 12, p. 12). The Commissioner contends that the RFC was supported by medical evidence from Drs. Prezio, Hartman, and Dambrocia, and that the ALJ was free to "choose between properly submitted medical opinions." (*Id.*).

After careful review of the record, the Court finds that the physical portion of Plaintiff's RFC is supported by substantial evidence. Contrary to Plaintiff's claim, the ALJ did not conclude that he was capable of a "full range" of light work. Instead, the ALJ determined that Plaintiff was capable of light work with certain notable restrictions given his physical, pain-related limitations. (R. 22–25). Specifically, the RFC restricts Plaintiff from making rapid neck movements, requires him to have the ability to change positions for comfort, allows him to stand and walk in 30 minute intervals, and only requires him to occasionally squat, stoop, crouch, kneel and crawl. (R. 22).

In reaching this physical RFC, the ALJ relied on clinical findings, diagnostic tests, and reports of treating and examining sources. (R. 24–25). The ALJ's decision notes that, despite Plaintiff's reports of weakness and loss of muscle mass, Dr. Prezio found that he displayed "5/5 strength throughout accompanied by normal reflexes and sensation," as well as "full range of

motion throughout the upper extremities and lower extremities." (R. 24). The ALJ gave probative value to Dr. Prezio's assessment that Plaintiff's "ability to engage in prolonged periods of standing and walking is only mildly to moderately limited," as was his "ability to squat kneel, bend and engage in heavy lifting." (R. 25).

Dr. Prezio's assessment of "mild to moderate limitations" in Plaintiff's ability to sit, stand, or walk is consistent with an RFC for light work.[2] Moreover, his opinion may constitute substantial evidence to support the ALJ's determination in this case. *See, e.g.*, *Rosier v. Colvin*, 586 F. App'x 756, 758 (2d Cir. 2014) (holding that evaluations by a consultative examiner offered sufficient evidence to support the ALJ's rejection of findings by a treating physician); *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) ("The opinions of three examining physicians, plaintiff's own testimony, and the medical tests together constitute substantial evidence adequately supporting the [Commissioner's] conclusion that the plaintiff's injuries did not prevent her from resuming her job as a sewing machine operator.").

In addition, Dr. Prezio's findings are consistent with the assessment of Dr. Hellman, Plaintiff's treating provider, that Plaintiff maintained an "unlimited ability to sit," and that Plaintiff had full strength throughout with "no evidence of any neurological deficit." (R. 24–25). And the ALJ gave this portion of Dr. Hellman's opinion significant probative value. Further, Dr. Prezio's assessment is consistent with PA Alexander's findings in 2016 and 2017 that Plaintiff had full "motor strength in the upper and lower extremities," and negative results on

---

[2] *See, e.g.*, *Nelson v. Colvin*, 2014 WL 1342964, at *12, 2014 U.S. Dist. LEXIS 46630, at *33 (E.D.N.Y. 2014) ("the ALJ's determination that [p]laintiff could perform 'light work' is supported by [doctor's] assessment of 'mild to moderate limitation for sitting, standing, walking, bending, and lifting") (citing *Lewis v. Colvin*, 548 F. App'x 675, 677–78 (2d Cir. 2013)); *Taylor v. Astrue*, 32 F. Supp. 3d 253, 270–71 (N.D.N.Y. 2012) (finding that a doctor's opinion that the plaintiff had a moderate limitation in walking, provided support for the ALJ's RFC assessment that plaintiff could stand/walk/sit for about six hours in an eight-hour workday).

straight leg tests. (R. 241–43). The ALJ also noted that Plaintiff was able to ambulate effectively and said that he could lift ten to twenty pounds. (R. 20, 24). The ALJ accounted for Plaintiff's physical limitations by restricting his RFC to "avoid rapid neck movements," the freedom "to change positions for comfort," and a limitation in his ability to "stand and walk for [only] 30 minute intervals." (R. 22).

In sum, the Court finds that the ALJ properly accounted for Plaintiff's physical limitations and this portion of the RFC is based on substantial evidence. Thus, remand is unwarranted on this basis. *See Reithel*, 330 F. Supp. 3d at 910–12 (upholding ALJ's RFC determination for light work where medical evidence indicated that the plaintiff was observed with no gait disturbance, normal strength and full range of motion); *Sloan v. Colvin*, 24 F. Supp. 3d 315, 324–26 (W.D.N.Y. 2014) (noting that "consultative physician's opinion may serve as substantial evidence," and finding no error in ALJ's reliance on consultative examiner's opinion in developing the RFC assessment).

### 2. Plaintiff's Testimony and Treating Sources

Plaintiff next argues that the ALJ erred by failing to "fully credit [Plaintiff's] testimony" and "the opinions of his treating source provider." (Dkt. No. 9, pp. 9–13). Specifically, Plaintiff claims that the ALJ erred in assigning little weight to Dr. Hellman's assessment that Plaintiff would be limited to two hours standing or walking each day, and Plaintiff's testimony that his pain was a ten out of ten on the pain scale. (*Id.*, pp. 11–12). Plaintiff also asserts that the ALJ also failed to consider Plaintiff's alleged symptoms, pain, and limitations that prevent him from kneeling, crouching, or bending, as well as prolonged standing, sitting, and walking. (*Id.*, pp. 12–13). In response, the Commissioner states that "the ALJ specifically considered Plaintiff's subjective complaints, but determined that his complaints were not entirely credible."

15

(Dkt. No. 12, p. 10). The Commissioner argues that "the ALJ had valid reasons for giving Plaintiff's testimony and Dr. Hellman's opinion reduced weight," and specifically points to medical evidence showing that "Plaintiff had full strength, and only minimal physical and mental deficits." (*Id.*, p. 11).

Although Plaintiff regularly reported pain and discomfort from his back condition, "disability requires more than the mere inability to work without pain." *Prince v. Astrue*, 490 F. App'x 399, 400 (2d Cir. 2013) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)). Merely pointing to evidence that Plaintiff experienced pain as a result of his conditions is insufficient to establish disability. Moreover, the ALJ described in detail Plaintiff's reported pain and limitations, but concluded that the record contained "limited substantive support" for Plaintiff's allegations of disabling symptomatology. (R. 24–25). Indeed, while the ALJ is required to take in account the claimant's reports of pain and other limitations, she is not required to accept the claimant's subjective complaints without question. *Genier*, 606 F.3d at 49. Rather, she may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record, as the ALJ did here. Thus, Plaintiff's claim that the ALJ erred in failing to consider his subjective testimony is without merit.

As to Plaintiff's treating providers, the treating physician rule requires that a hearing officer give "deference to the medical opinion of a claimant's treating physician." *Church v. Colvin*, 195 F. Supp. 3d 450, 453 (N.D.N.Y. 2016) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). However, "[w]hen a treating physician's opinion is not consistent with other substantial evidence in the record, such as the opinions of other medical experts, . . . the hearing officer need not give the treating source opinion controlling weight." *Id*. Thus, "the Commissioner retains the discretion to reach a conclusion inconsistent with an opinion of a

treating physician where that conclusion is supported by sufficient contradictory evidence." *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 53 (2d Cir. 2016) (noting that an opinion from a claimant's treating physician is "not absolute").

Here, the ALJ's decision makes clear that she considered the opinions of Plaintiff's treating physicians, but mostly discounted them because they were contradicted by other medical evidence. (R. 24–25). The ALJ gave good reasons for rejecting Dr. Hellman's restrictive findings, concluding that they "do not appear to be supported by the record." (R. 25). Indeed, Dr. Hellman's Medical Source Statement does not appear to be supported by any diagnostic basis or medical findings, and it is worth noting that he is an oncologist, not an orthopedist. Dr. Hellman's assessment is also inconsistent with Dr. Prezio's findings that: (1) Plaintiff had full strength and range of motion in each of his extremities; (2) exhibited normal reflexes and sensation; (3) had a negative straight leg raise test; (4) had a normal gait; (5) was briefly able to stand on his heels and toes; and (6) exhibited only "mild to moderate limitations with respect to engaging in prolonged standing, walking, squatting, kneeling, bending, or doing any heavy lifting as a result of findings noted in the lumbar region." (R. 291). Notably, Plaintiff's treating provider PA Alexander made similar findings in 2016 and 2017. (R. 241–43). The ALJ also cited evidence that Plaintiff exhibited an "exaggerated pain response" during his consultative examination. (R. 24).

Ultimately, while Plaintiff may disagree with the ALJ's findings, the record shows factual support for each one, and the ALJ had discretion to weigh the evidence and resolve conflicts in the record. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); *Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 497 (S.D.N.Y. 2018) (noting that ALJ has authority "to resolve conflicts

in the record, including with reference to a claimant's reported activities of daily living") (citing *Domm v. Colvin*, 579 F. App'x 27, 28 (2d Cir. 2014)). Therefore, the Court finds that the ALJ properly considered Plaintiff's medical record as a whole and properly balanced the evidence within her discretion to resolve inconsistencies. Thus, remand is unwarranted on this basis.

### 3. Development of the Record

Finally, Plaintiff appears to assert five separate arguments in support of his claim that the ALJ failed to properly develop the record. (Dkt. No. 9, pp. 5–9). "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). To that end, the ALJ must "investigate and develop the facts and [ ] arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). The ALJ's duty becomes more pronounced in cases involving *pro se* claimants, since an "ALJ has a duty to adequately protect a *pro se* claimant's rights 'by ensuring that all of the relevant facts [are] sufficiently developed and considered.'" *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990). Where the ALJ fails to develop the record, remand is appropriate. *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999).

Here, Plaintiff first claims that the "ALJ failed to seek, obtain and/or consider the claimant's County mental health treatment records where he has been evaluated by multiple providers, received ongoing counseling and medication for anxiety and depression." (Dkt. No. 9, pp. 5, 7). In response, the Commissioner argues that "there is no evidence that any such

records exist," and that "Plaintiff failed to identify with any specificity where any additional mental health treatment records would originate from." (Dkt. No. 12, p. 8). The Commissioner also contends that "there is no evidence that Plaintiff's mental impairments [ ] received any continued treatment or merited restrictions above and beyond provided in the ALJ's decision." (*Id.*).

After thorough review of the record, the Court finds that the extent of Plaintiff's mental health treatment is unclear. On one hand, Plaintiff reported to Dr. Hartman in March 2017 that "he has never been psychiatrically hospitalized and has no history of outpatient mental health services." (R. 282). On the other hand, Plaintiff testified at the hearing in May 2017 that he saw a counselor named David Lebki at Samaritan Hospital "for like three months now" who "tries to help me with my anxiety." (R. 49–50). Plaintiff further testified that he was prescribed medication for his mental health conditions by a nurse practitioner, Janet Jaeger. (R. 52). Thus, contrary to the Commissioner's assertion that Plaintiff's testimony lacked specificity, Plaintiff explicitly identified two potential treating providers by name, as well as Samaritan Hospital where he claimed to have been treated. (*See* R. 49–50, 52). Based on his testimony, it appears that Plaintiff may have started mental health treatment sometime after he was evaluated by consultative examiner Dr. Hartman (March 2017), and before the ALJ issued her decision (September 2017). But the record contains no treatment notes or medical opinions from these providers whatsoever.[3] There is also no evidence that the ALJ made any

---

[3] The Court notes that Plaintiff had several opportunities to present these records, with the benefit of counsel, to the Appeals Council and to this Court. The failure to do so raises some concern regarding the veracity and seriousness of Plaintiff's claim and represents a major oversight by his counsel. Nonetheless, Plaintiff's failure to provide the records does not diminish the ALJ's independent and affirmative duty to seek the treating mental health records when she became aware of their possible existence at the hearing. *See* 20 C.F.R. § 404.1512(b)(1).

effort to obtain those records before issuing her decision. Thus, it is uncertain what, if any, findings these treating sources made or opinions they had as to Plaintiff's mental limitations.

Notably, the ALJ identified "adjustment disorder with depressed mood and social anxiety disorder" among Plaintiff's "severe impairments," (*See* R. 19), yet the record contains minimal evidence regarding Plaintiff's mental health history and no evidence or opinions from any treating mental health providers. Although Plaintiff underwent a psychiatric consultative examination, the complete absence of any records or medical opinions from Plaintiff's alleged treating mental health providers presents an obvious gap in the record, especially in light of sparse record overall. *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 268 (S.D.N.Y. 2016) (finding that the ALJ erred by not developing the record to fill in obvious gaps left by absence of records from the claimant's treating psychiatrist).

Under these circumstances, the Court finds the ALJ failed to develop the record as to Plaintiff's mental health history. At a minimum, the ALJ should have inquired further at the hearing to identify with greater certainty Plaintiff's alleged treating providers, Lebki and Jaeger, and then sought records from these sources before issuing a decision. *See* 20 C.F.R. § 404.1512(b)(1) ("We will make every reasonable effort to help you get medical evidence from your own medical sources and entities that maintain your medical sources' evidence when you give us permission to request the reports.").

Simply put, the ALJ had a duty to develop the record to get a complete picture of Plaintiff's mental health history and related limitations, and her failure to seek out records from Plaintiff's treating providers fell short of that standard. Therefore, remand is necessary for the ALJ to do so.[4] *See Siegmund v. Colvin*, 190 F. Supp. 3d 301, 308–10 (E.D.N.Y. 2016)

---

[4] Upon thorough review of the record, the Court finds that Plaintiff's remaining contentions regarding the ALJ's development of the record lack merit.

(remanding for further proceedings where the ALJ failed to "make reasonable efforts" to obtain reports from the plaintiff's treating providers); *Johnson v. Astrue*, 811 F. Supp. 2d 618, 629–31 (E.D.N.Y. 2011) (same).

## IV.    CONCLUSION

For the foregoing reasons it is

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum-Decision & Order; and it is further

**ORDERED** that, on remand, the Social Security Administration should seek to obtain treatment records and medical opinions from Plaintiff's treating mental health providers; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Date:    September 20, 2019
       Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge